It looks like we're ready for 24-9004 Liberty Global v. CIR. May it please the Court, Parker Rider-Longmead for Liberty Global. I will aim to reserve three minutes for rebuttal. The dispute here is whether the gain from LGI's sale of JCOM, its Japanese telecoms business, is foreign source income or U.S. source income. If the gain is foreign source, then LGI can claim credits for the more than $240 million in taxes that the government agrees were paid to the Japanese government on LGI's investment in JCOM, and thus avoid double taxation. If the gain is instead U.S. source, in contrast, then LGI cannot claim the full credit. The answer is that the gain is foreign source under the plain terms of the regulations, namely Section 1.904F-2D1, that Treasury was authorized to promulgate under Section 7805 of the Tax Code. Section 904F-3A covers all dispositions by an OFL account holder of property used predominantly in a foreign trade or business. Let me ask you a question. If there had been no sale, would the $241 million have gone into the OFL account? Well, Your Honor, every year there would have been income remitted back as dividends or deemed dividends to LGI, and JCOM would have been paying Japanese taxes for which LGI was responsible as a stockholder in JCOM. I don't think that's responsive. I mean, it either was going to go in there or it wasn't going to go in there. The $241 million that you want to claim, if there had not been a sale, was it going to go in the OFL account? It's not the $240-plus million, Your Honor, that goes into the account. What the sale does is it recognizes gain on this transaction and it fills up the OFL account. But that's going to happen regardless of the sourcing treatment that we're talking about here today. So there's going to be a recapture of the OFL account here. The only question is what happens to the gain in excess of the OFL recapture amount. And the question there is whether we're talking about U.S. source income or foreign source income. Well, Section 904 is talking about recapture. You're talking about recapture of the OFL. And why isn't the tax court exactly right that it doesn't talk at all about anything other than recapture of the OFL? Well, Your Honor, I think it's not quite right that it talks about nothing beyond recapture. Certainly recapture is the primary purpose of Section 904 F3A. But what the Congress and Treasury hear through the regulations it was authorized to prescribe. But we don't jump to the regulation, right? We start with the statute. I think there are three things. I also read against the background of the rulemaking authority in 7805A that show you that there's rulemaking authority here to prescribe the rule for gain in excess of the OFL account balance. The first thing is the broad disposition coverage in 904 F3A. It applies to any disposition by an OFL account holder of any property used in foreign trade or business. Any this is under the background tax rules. If those applied, it could be treated as foreign source or U.S. source, gain recognized or not recognized. But it applies to all of those. The definition in 904 F3B Romanet I makes clear that a disposition includes a sale, exchange, distribution, or gift of property, whether or not gain or loss is recognized. So the statute is saying it's going to provide the rule for all of these dispositions. It then provides a notwithstanding clause, the second point, provides a notwithstanding clause that turns off the other tax code provisions there. Well, all of them? Turns off all of them? So you don't get a dividend either, right? Well, I can come back to the dividend question. Well, no. Does it turn off all other provisions of the tax code? There is no dispute. It turns off provisions. That's a yes or no answer. Your Honor, yes. It turns them off with respect to gain recognition and sourcing treatment. Well, it doesn't limit it to that. You took a position before earlier that you didn't have to pay any taxes whatsoever because of that notwithstanding clause, right? Your Honor, one of the positions we took before the tax court was that the gain above the OFL recapture amount was not recognized because the rule provided in 904 F3A is that the gain That, of course, would be a drastic rule. And what we're pointing out here is that there is a gap in the operative language. So you've backed off of that argument? We're not making that argument before this court. The argument we're making before this court is that the Treasury regulates, Treasury's authorized under 7805A to prescribe the rules for gain recognition and sourcing treatment above the OFL recapture amount. And what Treasury is... But where's the limiting principle? I mean, your first argument would follow, wouldn't it? The one you've abandoned, if you're right here. I'm sorry, Your Honor. I'm not sure the first argument would follow. I may have misunderstood. But the point here is that Treasury is prescribing the rule whether there's gain recognition. It has to do that. It has the gap-filling authority to do that because 904 F3A doesn't supply the rule expressly for what happens above the OFL recapture amount. Well, then, isn't it 8... What is it, 856? Or do I have... Am I having dyslexia? 865, Your Honor. I'm having a little... So, but that goes back to the notwithstanding clause that we're talking about. But notwithstanding clause, both the Supreme Court and this Court have said over and over again that a notwithstanding clause comes into play if you have two provisions that conflict. There isn't a conflict here. If you treat this provision as dealing with what it says it's dealing with, the overall foreign loss, and you treat the excess as going back to the provision that's already there, which is 865, where's the conflict? So, I think, Your Honor, it's an order of operations question. And it's a right of first refusal, if you will, for Treasury to come in and prescribe the rule. Because the notwithstanding clause and the broad definition of disposition that makes clear that it covers all gain or loss, whether it's recognized and it's turning off the other co-provisions with respect to gain or loss recognition and sourcing treatment, it gives Treasury the space to solve the issue, to prescribe the rule and say what the rule will be. And I would like to turn to the regulation of possible... Before you do that, I think this is what I understood, or a twist on what Judge Carson asked. If the OFL account was zero and this transaction occurred, how would the $2.8 billion capital gain be characterized? Under your theory of the case. It would be U.S. sourced, Your Honor, under Section 865. But I think the point here is there would be double taxation then in that circumstance on LGI's investment in JCOM. The IRS agrees here that LGI is responsible for this more than $240 million in taxes being paid to the Japanese government. What we're really talking about is not a windfall or something of that nature. We're not increasing the foreign tax credits. We're just trying to get the limit, the foreign tax credit limit to the right place so that when you multiply it by the U.S. tax rate, the foreign tax credit scheme can actually give LGI credit for taxes that it has paid. There's agreement on that point. And so what the gap-filling authority that 7805 and 904 F3A allow Treasury to do is to address issues like this. I guess I don't understand what you're trying to say. So under Judge Timkovich's hypothetical, you're saying that it would be U.S. source income. And so going from there, the position has to be because there is some language in here characterizing what everybody agrees would be U.S. source income into foreign source income because there's an OFL account balance, then we have – you want to say that everything is then foreign source so you get to a credit for the $241 million. Your Honor, it's the Treasury regulations provide that outcome. The plain text of the Treasury regulations. And so I guess that gives me another question. We've had a change in Treasury regulations in sort of the relevant time period, right? That's part of your position. It happened after the 2010 tax. It happened in 2012. And so in your position – so under the 2012 reg, you would – your position would not carry the day. That's right, Your Honor. But prior to that, when it didn't say anything about it, you say it would. Well, Your Honor, I disagree that the regulations didn't say anything about it. In fact, I think what the regulations make clear, and I'd like to have an opportunity to walk the Court through them, is that what they're doing is they're borrowing the background tax provisions that do not apply of their own force because of the notwithstanding clause that's saying we're going to use those for gain recognition. So 1001, section 1001 in particular of the tax code, is just a general gain recognition rule that when a transaction or disposition occurs, gain is recognized at that moment. There are certain transactions that turn off that principle, section 351, 361 exchanges, and that's why you have certain so-called non-recognition transactions, and the rule also operates on those. But what the regulation does in D1 is that it says that gain shall be recognized on the transaction and such gain shall be treated as foreign source. So the policy the Treasury adopted in the rules was that it took the gain recognition and it pegged it exactly to foreign source treatment. Do you have some authorities that applied the Treasury regulation that was in place in 2010 in the manner that you're talking about? Was that ever disputed during that time period? Did the tax court or any other court ever rule on that? The tax court, other than in this case, the tax court hasn't ruled on it to our knowledge. But of course, many negotiations happen between the IRS and tax courts, as happened here, that don't become public knowledge. We don't have that kind of information. We have the field service advice memo that talks about some of how these principles work as well. Well, and you rely on that. That's the field service guidance from 2000? That's right. And that's what you rely on for the argument that the gain from the stock sale is a proxy for future earnings? That's right, Your Honor. Doesn't that guidance also say pretty clearly that the deeming and recharacterization provision applies only to the lesser of the gain or the overall foreign loss? I don't think it does, Your Honor. I think it's talking about...  I'm not sure which particular provision you're looking at, Judge McHugh. But I don't think it specifically addresses the question here. It does talk about... It's at page 6. It's the IRS National Office Field Service Advice of Section 904F3. And it's memorandum number 200041-004 at 6, October 13, 2000. I think what Treasury is explaining that Regulation D1 does here is that it applies... It says whether any gain is otherwise recognized on the disposition, and without regard also to the source of any gain that is otherwise recognized on the disposition or the manner in which any gain is otherwise recognized. The point being that D1, which I just discussed with Judge Carson, which pegs the foreign source treatment to the gain recognition, applies in all circumstances. And then other provisions in the regulations in D3 and D7, example 1 in particular, make clear that the gain recognition rules in the background code provisions are the provisions that apply to give you the gain recognition rule. Well, in the statute, in subsection F1, it's pretty clear that it's talking about the lesser of, correct? When it's talking about recapture, Your Honor. It's talking about recapture of your overall foreign losses, right? That's right. And it's your position that the regulation that's interpreting and applying this statute somehow broadens that to treat all of the gain from a stock sale as being able to be treated the same way the lesser of would be in the statute? Well, Your Honor, I think 904 F3A is doing two things. It's giving you a recapture principle, but it's also addressing the foreign tax credit regime more generally and how to avoid double taxation. It's providing a rule that applies to every single disposition and then it's saying, here's the rule that's going to apply up to the recapture amount, but not saying what happens after that. And we think because of the notwithstanding clause and the broad definition of all the dispositions that it covers. So it's notwithstanding, the regulation can say notwithstanding the statute? Sorry, Your Honor. I took you to be asking about 904 F of the tax code. I was pointing out that in the tax code, the scope of 904 F3A is broader than just 904 F1. If I could just reserve one minute, if possible. And just to ask the same question a little differently, the term such gain in your argument means all gain. Well, the reason... For purposes of the recapture. It does, Your Honor, but the reason it does is because the Treasury regulations themselves, and I point in particular to D3 and D7 Example 1, are using the other code provisions that otherwise wouldn't apply to recognize the gain that those provisions would recognize. And in this case, as we discussed, all the gain gets recognized. That's all the gain that comes in is the gain that's recognized. And then such gain, that is all the gain that is recognized, gets treated as foreign source income. Okay. Thank you, counsel. Good morning. May it please the Court. Judith Hagley from the Department of Justice representing the Commissioner. Under Section 865, a U.S. resident that sells foreign stock must, statute says shall, treat the gain as U.S. source. The $3 billion in gain is realized. The $3 billion is U.S. source. If that taxpayer had an OFL balance of $1, then $1 of the $3 billion is treated as foreign source under Section 904.3's recapture. But the rest of the gain remains unaffected. And that result flows from the text, context, and purpose of Section 904.f3a, which makes clear, as the text were correctly determined, that it applies only to the amount needed to recapture the outstanding OFL balance. And Liberty Global's claim that that $1 of an outstanding OFL could resource the $3 billion in U.S. source gain is foreign source and only conflicts with the statute and its context and purpose. But it makes no sense. It makes no sense that a taxpayer with no OFL account and a taxpayer with an OFL of $1 would have such a dramatic difference with the OFL account holder getting the preferential tax roll. Well, I agree it makes no sense. I think the argument is that we put our blinders on and look at the plain language of the regulation and such gain means all gain. How do you respond? Well, the response to that is that Liberty Global, well, two responses. The first one, direct response, is that they misread the regulations, focusing on snippets and isolation, rewriting the regulation, and reading it divorced of context. They look at Regulation 2D1, which provides a general overview of the operative rules that follow later in the regulation. But it does not address all gain. It doesn't even refer to the word all, purport to permanently resource U.S. source gain as foreign source and make it completely taxable. Section-D1 doesn't specify the amount recognized and refers to income to which Section 2A of the regulation is applicable. And Section 2A applies only until the OFL account is recaptured. So the regulation tracks the statute in Section 2A and 2A is incorporated by reference in dash 2D1. This point was emphasized by the tax coordinates opinion. At addendum page 20, we repeated the point in our brief on page 58. Liberty Global ignores it. But Liberty Global's reliance on the regulations is misplaced in the first instance because it claims that there's some gap for the Treasury regulations to fill. And there is no gap with regard to gain exceeding the OFL account, just a limit in the statute's scope. Section 904F3 is limited to the lesser of the OFL account or the built-in gain. There is no gap for the regs to fill. Does your subsequent regulations suggest that you thought there was a gap? I'm sorry? The regulatory history, doesn't that suggest that the service thought there was a gap here? No, the regulatory history in this case, if you look at the preamble to the 1987 regs and then the 2007 regs, it's all about just recapturing an outstanding OFL account. There's no reference to gain in excess, no thought that they were filling some gap. And there is no gap with regard to the excess because there are other statutory provisions that apply to gain in excess of an OFL account. Section 865 with regard to sourcing, section 1001 with regard to gain recognition. And in this case, because we're dealing with CFC stocks, section 1248 with regard to dividend treatment. Why was there a regulation change then if there wasn't some kind of dispute over that? Do you know? I mean, historically, were people taking this position in 2012 at the time the new treasury reg came out? Well, the regulation in 2012 clarified the earlier statute. Nobody is answering questions today. Everybody's answering what they want the question to be. The question is, was there a position like this being taken at the time? Are you aware of that? You may not know. According to the preamble, a question had been raised about what do you do with regard to U.S. gain in excess of an OFL account. As far as I know, no taxpayer had actually taken that position on a tax return or had gone into an administrative proceeding. Because the statute is quite clear and what happened in 2012 is the reg became as clear as the statute. But in addition, shortly after the 1987 regulation was promulgated, Treasury issued the memorandum that Liberty Global relies on, the 2000 Field Source Advice Memorandum, which makes two points, both that support the tax court's reading of the regulation, in this case, number one, the regs simply don't address the situation where it's U.S. source gain that's being recognized. They address other situations and that in that situation where U.S. source gain is recognized, the gain is resourced as foreign source only to the extent of the OFL account balance. And you said the statute is clear on that. The statute is clear on that. What do you point to in the statute? First, beginning with the plain language of the statute, it provides that its deeming rule applies only to the lesser of the outstanding OFL account balance or the built-in gain in the asset. The statute isn't concerned with and doesn't address gain in excess of the OFL account balance. It's a very limited deeming rule. Could the regulation expand on that? If the regulation were to try to expand on that, would conflict with the operative sourcing rule at section 865 and it would be invalid? I'm not here to disavow our regulation. I'm here to disavow Liberty Global's strained reading of the regulation. They rely on the notwithstanding clause, but the notwithstanding clause in section 904 of 3 does not turn off the other provisions. It doesn't displace other provisions if those two provisions can be read harmoniously as is the case here. It just determines which provision prevails in the event of a conflict. And there's no conflict here. If they were right about that notwithstanding clause, wouldn't that also invalidate 1248 and they wouldn't be entitled to a dividend? That's correct. That's correct, Your Honor. Their reliance on the very dividend that gives them the foreign tax credit, which by the way, they got the deemed foreign tax credit. They just can't use it in the year without foreign source income. Depends on reading the notwithstanding clause the way that we do. Well, would it also read out 865 if it was notwithstanding anything else? If it was notwithstanding. I mean, I'm trying to figure out what the limiting principle is to reading the notwithstanding clause the way it's been argued. Yeah, so notwithstanding clause applies only to the extent of a conflict and there is no conflict with any other provision, whether it's 865, 1248, 1001 with regard to gain in excess of the OFL account because the 904F3 is only concerned with amounts that are equal to or lesser than the OFL account. So we request that this court affirm the well-reasoned decision of the tax court. Unless the court has any further questions, the government rests on its brief. Thank you, counsel. And could you give counsel two minutes? Thank you, your honor. Just to return to the question of what parts of the regulation make clear that we're talking about all the gain. It's in D1 that says in Romanet 1, gain will be recognized on the disposition of such property and two, such gain will be treated as foreign source income. And if you look at the other provisions, D3, D4, and D7, they make clear that what the regulations are doing is looking to these other tax code provisions that 904F3A and its notwithstanding clause have turned off. So for example, the lead-in language in D3, dispositions where gain is recognized irrespective of section 904F3, making clear that 904F3 applies the rule, but they're looking in the counterfactual if it didn't. Or in D4, the lead-in dispositions in which gain would not otherwise be recognized. And then in example one to D7, you have discussion about how a taxpayer recognizes $1,000 of gain on a sale under section 1001, which is one of these background provisions, but has only an overall foreign loss account balance of $600. And in all these cases, you're taking that gain based on the recognition background principles and under the plain text of D1, treating it as such gain. I would also say that to the response that these rules don't make much sense, there are plenty of what we might call cliff rules in the tax code. It's just you change by 0.01% of a percentage point and all of a sudden a different rule applies. This is, for example, the rules that apply in 865F for sourcing treatment outside the 904F3 context if you have dispositions of CFC stock. And if you have 80% of the stock of that CFC, it's treated as foreign source. 79.99% is treated as U.S. source. So these are necessary line drawing decisions that Congress makes, and Treasury did the exact same thing here when it made the rule that was ratified in 2004 when Congress came in and said, we're gonna apply all these rules to CFC stock sales. And that's the rule that applies until 2012 when Treasury decided to change the rule. We ask that the court reverse. Thank you, Your Honor. Thank you, Counsel. We appreciate your arguments. Counsel excused and the case will be submitted.